POSTAL TELEGRAPH CABLE COMPANY *v.* EARL D.
CHRISTIAN.

[59 South. 933.]

TELEGRAPHS AND TELEPHONES. *Suit for nondelivery. Question for jury.
Punitive damages.*

Where a telegram was delivered to a telegraph company's agent
by the sender and was not forwarded to and delivered to the
sendee in a reasonable time and there was a failure by some
agent of the telegraph company to properly transmit the tele-
gram and by reason of this failure the sendee sustained actual
damages, it was the province of the jury to decide whether the
telegraph company's conduct in the matter was so grossly care-
less as to indicate a total disregard of the sender's rights and
entitle him to punitive damages.

APPEAL from the circuit court of Scott county.

HON. C. L. DOBBS, Judge.

Suit by Earl D. Christian against the Postal Telegraph
Cable Company. From a judgment for plaintiff, defend-
ant appeals.

The facts are fully stated in the opinion of the court.

*Flowers, Alexander & Whitfield,* for appellant.

It was not proved that the defendant's agents or serv-
ants did, with respect to the handling of this message,
any wrong except that they did not deliver it according
to the contract. This is all that was shown. There was
no attempt made to show that the agents and servants of
the defendant harbored any ill will towards the plaintiff
nor that they refused to try to send the message nor
that they did anything that was wrongful. It was only
shown that the company violated its contract. It was
not proven why it violated it, nor what, if any, wrong-
ful act occasioned the delay.

In the case of *Steinberger* v. *Western Union Telegraph
Company,* 97 Miss. 260, the court held that the mere fail-

ure to deliver a message coupled with the failure of the telegraph company to offer any excuse or explanation might justify the award of punitive damages.. But the court did not mean to say that willfulness or wantonness may be presumed. But it was said that a jury might with reason conclude that an act was wrongful and intentionally so if the defendant upon being chargegd with it refused to offer any excuse. The silence of the company becomes a fact in the case. It was therefore held that an admitted failure to deliver without any explanation of the failure being offered might warrant the imposition of exemplary damages.

But here there was not a failure to deliver. There was an unusual delay in making the delivery and if no explanation had been offered the jury might have been warranted in presuming that it was intentional and wrongful else the company would have explained it. But we met this presumption. We come in and make our explanation. And we prove what we did and it is not denied or discredited.

We are charged with having willfully and wantonly delayed the plaintiff's telegram. We may be subjected to punitive damages unless we offer an explanation. Our silence, under such circumstances, in the face of such charges, would be so important as that the jury might be justified in thinking that we acted willfully and in total disregard of the rights of the plaintiff. But we bring our witnesses and prove that there was a mistake, wholly unintentional, wholly without malice, fraud or oppression. Still the court says the jury may proceed to assess punitive damages against us.

This court has announced the rule in strong terms in the case of *Western Union Telegraph Company* v. *Miller,* 97 Miss. 225; *Railroad* v. *Marlatt,* 78 Miss. 872, 29 South. 62; *Cocke* v. *Telegraph Co.,* 84 Miss. 380, 36 South. 392; *Railroad Co.* v. *Dodds,* 97 Miss. 865.

As above stated, this is a case in which exemplary damages were not allowable, and the court should have

so informed the jury, as requested by the defendant in one of its instructions. In the case of *Chicago Railroad Company* v. *Scurr,* 59 Miss. 456, 42 Am. Rep. 373, the court says:

"That in any and all actions for damages, where proof fails to show anything that will warrant an imputation of willfulness, recklessness, or rudeness, it is the duty of the court to inform the jury, when requested to do so, that they cannot inflict punitive damages. Not to do so, in a case free from doubt, would be abdication of judicial authority, and the permission of the jury to violate the settled principles of law."

In the case of *Western Union* v. *Miller,* 93 Miss. 650, the court held that the facts justified submission of the question of punitive damages to the jury but there the plaintiff's evidence showed affirmatively an intentional wrongful act on the part of the defendant's agents and servants.

. The appellee, Christian, suffered no damage which could be recovered upon proof of simple negligence. The mental disturbance, the inconvenience, the doing without supper, the getting frightened at the station, could not be recovered for in the absence of reckless or wanton wrong or such wrong as authorizes the infliction of exemplary damages.

*Baskin & Wilbourn,* for appellee.

Appellant's counsel asked for a peremptory instruction in this case, predicating his right for such instruction in case of *Western Union Tel. Co.* v. *Miller,* 97 Miss. 225. The court will observe from this case, that this was a suit for failure to transmit a telegram advising that a relative was very sick, and the reason assigned for the failure to deliver this telegram was that there was a strike on by the employees of the telegraph company and, therefore, it was impossible for the telegraph company to deliver said telegram. This strike was undis-

puted and constituted a reason for the telegraph company's failure to deliver said telegram. Nothing of that sort is the case in the instant case. No strike, no atmospheric trouble, no one interfering in any wise with the use of wire No. 15 from Shaw, Miss. to Memphis, Tennessee, and from Memphis to Forest, Miss.

The court has held in the case of *Steinberger* v. *Western U. T. Co.*, 97 Miss. 260, that where a telegram had not been delivered and the evidence disclosed no attempt to deliver said telegram, that the appellant having violated its duty to the appellees by not delivering the telegram, the jury could hardly escape the conclusion that the negligence of the appellant was so gross and careless as to indicate a total disregard of the appellees' rights and to warrant the jury imposing punitive damages. In the instant case not only was there a failure to deliver said telegram, but there was no valid excuse for such failure, and in addition, the telegram would not have been sent had not the appellee been assured before the sending of said telegram that it would be sent and the appellant's agents were advised by appellee that he would not go alone if there was any trouble about transmitting the telegram from Shaw, Miss., and delivering it at Forrest, Miss. And again, the direct result of the failure to transmit and deliver said telegram caused the appellee to suffer, not only mentally but physically, when left at Vicksburg without any one to look after him; and besides the duty devolved, we submit, upon Gilliland and Conrad, the agents of the appellant, advised as they were of the importance of the telegram, and why appellee wished to send it, to notify the appellee of the uncertainty of the delivery of the telegram. They surely were uncertain about whether the telegram had ever been received in Memphis, and yet they saw the appellee board the train at the little town of Shaw, necessarily acting upon the assumption that Gilliland and Conrad had made good their assurance to him that said telegram would be delivered.

We submit that the conduct of the appellant's agents was not only in utter disregard of his rights, but the negligence was so great as to amount to criminal negligence.

We cite, also, case of *Western Union Tel. Co.* v. *Hiller,* 93 Miss. 658.

As above stated, we think the facts in this case warrant, under the decisions of our court the infliction of punitive damages, yet the verdict of the jury would indicate that the damages found were not in the nature of punitive damages, but more in accord with the rule with reference to measure of damages in the case of *Cumberland Tel. & Tel. Co.* v. *Hobart,* 89 Miss. 261, in which this court quotes, with approval, that compensatory damages are not necessarily limited to actual money loss;. that damages for discomfort and inconvenience might properly be considered as compensatory damages. The inconvenience and annoyance occasioned directly by the wrongful act or refusal of the defendant are always legitimate items in estimating the damages in actions of this kind, refering to the services rendered by public service corporations. That this inconvenience, discomfort and annoyance must be left to the jury to determine what are the damages sustained, taking into consideration said discomfort, annoyance and inconvenience suffered.

Argued orally by *J. N. Flowers,* for appellant, and *W. E. Baskin,* for appellee.

Reed, J., delivered the opinion of the court.

Appellee brought suit against appellant for failure to deliver a telegram. A verdict was rendered for seven hundred and fifty dollars. From the judgment of the court this appeal is prosecuted.

The appellee resided at Shaw, Miss. On June 1, 1910,. his wife was visiting in Forest, Miss. About two o'clock p. m. on that day appellee delivered to appellant a tele-

gram, directed to his wife at Forest, Miss., which is as follows: ''Will leave on afternoon train to-morrow. You and Fay or mamma meet me in Vicksburg—will go over Park.'' The telegram was not delivered to Mrs. Christian, appellee's wife, on that day or the next day; in fact, was not delivered at Forest until about June 4th. Appellee was paralyzed, having no use of his lower limbs, and going about in a rolling chair. On June 2d, at 2:25 p. m., he boarded the train at Shaw for Vicksburg. No one met him at Vicksburg. He was taken from the train and carried to the Carroll Hotel in that city, and placed in a chair in front of the hotel, where he remained some four or five hours, waiting to take the train to Forest. It seems that this entailed on him some expense, and was attended with inconvenience and from his statement, with some physical suffering. By reason of appellant's failure to send and deliver the telegram to Mrs. Christian, appellee, in his helplessness, did not have any one to look after his necessities and to take care of him while at Vicksburg. It appears that the rolling chair which was used by appellee at Shaw was sent by express through to Forest. It also appears that appellee had the assistance in Shaw of a colored man, who attended him. It is shown that the agent for appellant at Shaw knew the physical condition of appellee, and knew that he had sent forward his rolling chair, and had left Shaw for Vicksburg unattended.

Appellant's excuse for failure to send and deliver the telegram is as follows: Its operators and agents at Shaw attempted to send the message to Memphis, because it was the custom at that office to send such telegrams through Memphis. After several efforts were made, and finally, about five o'clock p. m. on June 1st, the operator at Shaw thought that he had an acknowledgment of the receipt of the message from the Memphis office, and noted the same on the message. Nothing further was done by the operator at Shaw in the

matter. It is not shown that there were any weather or
other conditions which should have interfered with the
transmission of the message. The agent at Memphis de-
nied receiving the message.

Appellant claims that the trial court erred in granting
an instruction which presented to the jury the question
of punitive damages in this case. The giving of such in-
struction was not error. The court was justified in giv-
ing it by the law, as clearly stated in the case of *Stein-
berger* v. *Western Union Telegraph Co.,* 97 Miss. 260,
52, South. 691. In that case the telegram was delivered
to the company at Eureka, Kan., to be transmitted to
Tupelo, Miss. It was not delivered, and no excuse was
given therefor. It was decided that the company was
liable.for punitive damages. The court, speaking through
SMITH, J., said: ''Since appellee not only violated its
duty to appellant by not delivering the telegram, but
offered no excuse at all therefor, the jury could hardly
escape the conclusion that its conduct in the matter was
so grossly careless as to indicate a total disregard of
appellant's rights. In fact, they would have been war-
ranted in believing that its failure to deliver was in-
tentional; otherwise, some excuse would have been given
therefor.''

It may be said in the instant case that an excuse was
offered; but it was a question of fact to be decided by
the jury as to whether this excuse was sufficient, and, in
fact, whether the statements made by the agents of ap-
pellant amounted to an excuse. In truth all of appel-
lant's testimony regarding the handling of the message
was for the jury's consideration, and the jury had the
power to say whether they believed or disbelieved such
testimony. It is clear that the telegram was delivered to
appellant's agent by appellee, and that it was not with-
in a reasonable time forwarded to and delivered to ap-
pellee's wife; that there was a failure by some agent
of appellant company to properly transmit this tele-

gram. It is further clear that by reason of this failure appellee sustained actual damages. It was in the province of the jury to decide that appellant's conduct in the matter was so grossly careless as to indicate a total disregard of appellee's rights.

In this case the question of fact was presented to the jury. They have decided, and we will not disturb their verdict.

*Affirmed.*